**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00110-GNS**

**GRAHAM PACKAGING COMPANY, L.P.**                                    **PLAINTIFF**

**VS.**

**RING CONTAINER TECHNOLOGIES, LLC**                                  **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

Before the Court in this patent-infringement case is Defendant Ring Container Technologies, LLC's ("Ring Container's") Motion to Compel Production of Testing Data and Complete Interrogatory Responses. (DN 47). Plaintiff Graham Packaging Company, L.P. ("Graham Packaging") has responded in opposition (DN 48). Ring Container has filed a reply (DN 49). This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), for resolution of all non-dispositive matters, including discovery issues. (DN 18).

### I. Background

Graham Packaging has designed, manufactured, and sold containers for use in the food, beverage, household, and automotive industries since the 1970s. (DN 1, at ¶ 1). In 2014, Graham Packaging allegedly improved on existing technology by creating a new container for use in the food and beverage industry with enhanced oxygen scavenging capabilities. (*Id.* at ¶¶ 2-3). Graham Packaging filed a patent application for its new container on November 7, 2014. (DN 1-1). The U.S. Patent and Trademark Office issued Graham Packaging U.S. Patent No. 11,345,809,

entitled *Oxygen Scavenging Compositions Requiring No Induction Period* (the "'809 Patent") on May 31, 2022. (*Id.*).

Ring Container designs and manufactures plastic ketchup bottles in Louisville, Kentucky. (DN 47, at PageID # 519). Graham Packaging believes that in 2018, Ring Container began marketing and selling a competing oxygen scavenging container of its own under the brand name: BarrierGuard® OxygenSmart™. (DN 1, at ¶ 6). On February 8, 2023, Graham Packaging sent Ring Container a cease-and-desist letter, accusing Ring Container of infringing on the '809 Patent by manufacturing and selling its BarrierGuard® OxygenSmart™ line of products. (DN 14-1). Ring Container responded to this letter on March 8, 2023, arguing that Graham Packaging's communications were "classic bad faith patent assertion[s]" and that its BarrierGuard® OxygenSmart™ products were publicly announced well before issuance of the '809 Patent. (DN 14-2).

The same day Ring Container sent its responsive letter, Graham Packaging initiated this patent-infringement lawsuit. (DN 1). Graham Packaging's Complaint states that it recently obtained a sample of Ring Container's BarrierGuard® OxygenSmart™ container and that "lab testing confirmed that Ring Container's product infringes on the '809 Patent." (*Id.* at ¶ 7). More specifically, the Complaint indicates Graham Packaging tested several components of the oxygen barrier layer of Ring Container's products, including testing the nuclear magnetic resonance spectrum, conducting an elemental scan, and conducting a high-performance liquid chromatography-mass spectrometry (HPLC-MS") analysis. (*Id.* at ¶¶ 26-31). According to Graham Packaging, these tests, along with information gleaned from Ring Container's website, reveal that the peeled layer of Ring Container's products meet the components of Claim 1 of the '809 patent. (*Id.* at ¶¶ 24-37).

Ring Container filed an Answer, defending that the '809 Patent is invalid and, even if it was valid, Ring Container does not and has not infringed.[1] (DN 14, at ¶¶ 53-54). To support its invalidity defense, Ring Container identifies that Graham Packaging's patented technology uses prior art from Indorama Ventures called "Oxyclear®," which was developed before the '809 patent was filed. (*Id.* at ¶¶ 90-97).

On July 21, 2023, Graham Packaging served its Initial Infringement Contentions on Ring Container, which included an "Infringement Chart" outlining how Ring Container's products allegedly infringe on the '809 Patent. (DN 47-3). At the Parties' request, the Court held a telephonic conference in the case on September 8, 2023. (DN 39). During the call, Ring Container presented several disputes relating to Graham Packaging's discovery responses. (*Id.*). The Court required the Parties to meet and confer to resolve or narrow the discovery disputes and submit a joint status report on their progress. (*Id.*). The Parties' report indicated they were able to resolve some issues but that disputes as to Graham Packaging's responses to Ring Container's Interrogatory Nos. 6, 7, 9 and 10 and production of Graham Packaging's materials related to testing of the allegedly infringing products remained. (DN 43). The Parties proposed an expedited briefing schedule for Ring Container to file a motion to compel to resolve these issues (*id.*), which the Court adopted (DN 44).

Ring Container has now filed its Motion to Compel, asserting two issues. (DN 47). The first is whether Ring Container is entitled to discovery of the underlying lab testing that Graham Packaging performed on sample containers and used to support the infringement contentions and its Complaint. (*Id.*). Graham Packaging responds that its pre-litigation testing is protected under

---

[1] Additionally, Ring Container asserted several counterclaims, including violation of Missouri Statute § 416.650 and violation of Tennessee Statute 29-10-101. (*Id.* at ¶¶ 101-11). Graham Packaging filed a motion to dismiss Ring Container's counterclaims (DN 23), which the District Judge granted (DN 53).

work product privilege, that it has not waived that privilege, and that Ring Container has not demonstrated a substantial need for these materials. (DN 48).

The second issue is whether Graham Packaging must clarify its position as to whether prior art from third-party supplier Indorama Ventures ("Indorama") meets the claims in its '809 patent. (DN 47). Graham Packaging responds it has already amended its responses to INT. Nos 9 and 10 but that Ring Container cannot use the fact discovery process to force Graham Packaging to "do the work associated with Ring's invalidity case." (DN 48).

## II. Standard

District courts have broad discretion in discovery matters. *See Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014); *Smith v. Botsford Gen. Hosp.*, 419 F.3d 513, 527 (6th Cir. 2005). Under Federal Rule of Civil Procedure 26(b), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Six factors are used to assess proportionality: the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Under Rule 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3).

The party moving to compel discovery bears the initial burden of demonstrating relevance of the information or materials requested. *Veritiv Operating Co. v. Phoenix Paper Wickliffe, LLC*, 5:21-CV-00170-BJB-HBB, 2023 WL 2975868, at *6 (W.D. Ky. Apr. 17, 2023) (citing *Brewer v. All Coal, LLC*, No. 7:20-CV-00041-DLB-EBA, 2022 WL 5199868, at *2 (E.D. Ky. Oct. 5, 2022) (add'l citation omitted)). If the movant satisfies their initial burden, "the

4

burden shifts to the nonmoving party to show that production of the information or materials would be unduly burdensome." *Id.* (citing *Delta T, LLC v. Williams*, 337 F.R.D. 395, 398 (S.D. Ohio 2021)).

When privilege is at issue, the proponent generally bears the burden of establishing a *prima facie* case of privilege. *Mainstay High Yield Corp. Bond Fund v. Heartland Indus. Partners, L.P.*, 263 F.R.D. 478, 480 (E.D. Mich. 2009). Then, if the proponent makes the requisite *prima facie* case, "the party challenging the privilege . . . has the burden to establish that the communications in question are otherwise discoverable under an exception or waiver." *Shumaker, Loop & Kendrick, LLP v. Zaremba*, 403 B.R. 480, 484 (N.D. Ohio 2009) (collecting cases).

<u>III. Analysis</u>

A. INT Nos. 6 and 7

Ring Container's Interrogatory Nos. 6 and 7 request information from Graham Packaging regarding the facts and details of the prelitigation testing it conducted on Ring Container's allegedly infringing products. (DN 47-1, at PageID # 538-39). INT. No. 6 specifically requested Graham Packaging:

> Separately for each Accused Product, describe in detail  the factual circumstances surrounding Graham Packaging's first awareness, testing, inspection, and evaluation of any alleged infringement by Ring Container, including describing any investigations You undertook related to such awareness, including, but not limited to, identifying the date of any testing, inspection, or evaluation of the Accused Product, identification by production  number of all documents reviewed or created, and the Person(s) with knowledge of such  testing, inspection, or evaluation.

(*Id.*). Whereas, INT. No. 7 requested Graham Packaging:

> Identify and describe in detail any analysis, inspection, evaluation, or testing performed by you or on your behalf, of any polyethylene terephthalate packaging product or material produced by You, Ring Container, Indorama, or any third

party to determine one or more of the following characteristics of the packaging product or material: (a) its induction period, (b) the concentration of the antimony, (c) the concentration of phosphorous, (d) the presence of an oxidizable polyether-based additive, (e) the concentration of cobalt, and/or (f) its oxygen permeability immediately after the product or material is formed, including identifying the date of the analysis, inspection, evaluation or testing, a description of the equipment used for the analysis, inspection, or testing, and identification by production number of all documents related to or generated from or based upon the analysis, inspection, evaluation, or testing.

(*Id.*).

Graham Packaging objected to these INTs as "being vague, overly broad, unduly burdensome and seeking disclosure of irrelevant information" and asserted privilege over responsive information. (*Id.*). Notwithstanding those objections, Graham Packaging indicated it would produce documents sufficient to answer the INTs pursuant to Rule 33(d). (*Id.*). Later, Graham Packaging supplemented its response to INT No. 6 to state: "it became aware of Ring Container's BarrierGuard® OxygenSmart™ product around February 2019" and identified five documents produced pursuant to Rule 33(d). (DN 47-2). Ring Container now seeks to compel information responsive to INT Nos. 6 and 7.

   i. Is the testing information that Ring Container requests protected from disclosure under work-product privilege?

The work-product doctrine is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure. This Rule provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). To determine whether a document was prepared in anticipation of litigation, the court examines "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Kimberly-Clarke Worldwide, Inc. v. First Quality Baby*

6

*Products, LLC*, No. 1:CV-09-1685, 2010 WL 4537002, at *2 (M.D. Penn Nov. 3, 2010) (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993)). Two inquires comprise this test: (1) were the documents prepared at a time when litigation was reasonably foreseeable; and (2) were the documents prepared primarily for the purpose of litigation? *Id.*

The Parties dispute whether prelitigation testing in patent cases falls into the work-product doctrine codified by Rule 26(b)(3). Graham Packaging asserts that information responsive to INT Nos. 6 and 7 is protected under the work-product privilege because the requested testing information was prepared in anticipation of litigation. (DN 48, at PageID # 616). Graham Packaging cites to several cases from other district courts to support that "testing conducted in anticipation of litigation [is] protected under the work product doctrine." (*Id.* (citing *Innovative Sonic Ltd. V. Rsch. In Motion, Ltd.,* No. 3:11-cv-0706, 2013 WL 775349, at *2 (N.D. Tex. Mar. 1, 2013); *U.S. ex rel. Dye v. ATK Launch Sys. Inc.*, 2011 WL 996975, at *5 (D. Utah 2011))). Even the factual data generated by such pre-litigation testing, Graham Packaging explains, can be protected when testing was conducted at the direction of counsel and in preparation of litigation because such facts "are strongly indicative of the mental impressions, conclusions, opinions, or legal theories of a party's attorneys and are therefore protected by the work product doctrine." (*Id.* (citing *Reckitt v. Benckiser LLC v. Amneal Pharms., LLC,* No. 11-6609 (FLW), 2012 WL 2871061, at *6 (D.N.J. July 12, 2012)).

Ring Container, on the other hand, believes the responsive information related to Graham Packaging's prelitigation testing is not protected by the work-product doctrine. (DN 47, at PageID # 523-24). Relying on a case from the Federal Circuit, Ring Container claims that "work product [protection] does not extend to facts concerning such testing performed for litigation

purposes." (*Id.* (citing *In re Unilin Décor N.V.,* 153 F. App'x 726, 727-28 (Fed. Cir. 2005)).[2]

Because the testing performed by Graham Packaging are facts, not litigation strategy or legal impressions, Ring Container asserts such information cannot be properly withheld under the work-product doctrine. (*Id.* at PageID # 524 (citing *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2015 WL 13548427, at *6 (W.D. Ky. Aug. 4, 2015) (quoting *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002)))).

Caselaw from other districts supports that prelitigation testing in patent infringement cases can constitute protected work product. *See, e.g., Lexington Luminance, LLC v. Feit Elec. Co., Inc.*, No. CV 18-10513, 2020 WL 10052401, at *8 (C.D. Cal. June 12, 2020) (images and measurements obtained through the work of consulting experts are materials subject to work product protection); *nCAP Licensing, LLC v. Apple, Inc.*, No. 2:17-cv-00905, 2018 WL 10509455, at *2-3 (D. Utah Dec. 7, 2018) (undisputed by parties that prelitigation testing was protected work product); *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, Nos. 16-538, 15-541, 2018 WL 466045, at *3-4 (W.D. Penn. Jan. 18, 2018) (documents related to reverse engineering tests for establishing patent infringement naturally fall within the work product privilege); *Kimberly-Clark Worldwide,* 2010 WL 4537002, at *2 (testing materials in question are protected as attorney work product prepared in anticipation of litigation); *but see Pfizer Inc. v. Lupin Pharmaceuticals, Inc.*, No. 12-808-SLR, 2013 WL 6247357, at *2 (D. Del. Dec. 2, 2013) (defendant failed to carry its burden of proving work product privilege where

---

[2] In *In re Unilin Décor N.V.*, the lower court permitted the defendant to depose certain persons concerning the plaintiff's prelitigation testing, and the plaintiff sought a writ of mandamus from the Federal Circuit to vacate the district court's order. 153 F. App'x 726, 727-28 (Fed. Cir. Oct. 19, 2005). The Federal Circuit found plaintiff had not met its burden to obtain mandamus relief, which "is available only in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power." *Id.* at 728. Elaborating on its denial, the Federal Circuit stated plaintiff had not shown the district court clearly and indisputably erred in permitting limited deposition questions and clarified that the district court had only allowed inquiry into facts regarding the tests themselves but not any facts that would divulge legal strategies or impressions. *Id.*

testing appeared to be conducted in the ordinary course of business rather than with specific conduct associated with anticipation of litigation).

But these same cases have required more than bare allegations to establish work product protection for prelitigation testing information and documents. *See Lambeth Magnetic Structures,* 2018 WL 466045, at *3-4 (finding plaintiff had an objective reasonable belief that litigation to enforce the patent was forthcoming based on plaintiff's submission of two declarations under seal to support its work product assertions and two consulting agreements with academic colleagues); *Kimberly Clarke Worldwide*, 2010 WL 4537002, at *2 (finding plaintiff proved work product protection for prelitigation testing materials where plaintiff offered a declaration from counsel stating that the materials at issue were made in anticipation of litigation and submitted privilege logs showing the testing data was prepared during a time when litigation was contemplated).

Graham Packaging's allegations of work product privilege are conclusory at best. Graham Packaging states it only recently became aware of Ring's product and, at the direction of counsel, commissioned lab testing as part of its prefiling investigation. (DN 48, at PageID # 616). And Graham Packaging's Complaint merely stated that it "recently obtained a sample of Ring Container's BarrierGuard® Oxygen Smart™ container" which allegedly confirmed infringement. (DN 1, at ¶ 7). Then, Graham Packaging's response to INT. No. 6 stated it became aware of Ring Container's BarrierGuard® OxygenSmart™ product around February 2019. (DN 47-2).

But Graham Packaging has submitted no declarations, affidavits, or other evidence supporting that the tests at issue were prepared at a time when litigation was reasonably foreseeable and that the related documents were prepared primarily for the purpose of litigation.

Though Graham Packaging indicates it became aware of Ring Container's allegedly infringing products around February 2019, it waited over four years before filing this patent-infringement lawsuit. Graham Packaging does not identify when it conducted testing on Ring Container's products. While documents related to prelitigation testing may fall within the work-product privilege, Graham Packaging's bare claims of privilege are not supported by competent evidence.

Graham Packaging's refusal to produce a privilege log to substantiate its claims of work-product privilege adds support to this conclusion. Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party withholding information based on privilege must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P 26(b)(5)(A)(i)-(ii). Had Graham Packaging completed a privilege log in compliance with Rule 26(b)(5)(A), Ring Container could have determined whether the information and documents Graham Packaging is withholding were correctly entitled to protection. Without a privilege log, the Court does not know the extent of information or documents Graham is withholding on its bare assertions of work-product privilege.

Additionally, Graham Packaging disregards the distinction between fact or ordinary work product and opinion work product. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). Fact or ordinary work product consists of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or its representative. Fed. R. Civ. P. 26(b)(3)(A). While opinion work product consists of mental impressions, conclusions, opinion, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at

10

(b)(3)(B). As another judge in this District has clarified, "[t]he work product doctrine provides ordinary work-product only a qualified protection against discovery, while opinion work-product receives almost absolute protection from discovery." *Rawlings v. Marcum*, No. 1:22-CV-00001-GNS-HBB, 2023 WL 5490171, at *5 (W.D. Ky. Aug. 24, 2023) (citing *Roach v. Hughes, No. 4:13-CV-00136-JHM*, 2015 WL 13548427, at *6 (W.D. Ky. Aug. 5, 2015)). District courts within the Sixth Circuit and beyond follow the general principle that "underlying facts or data are not protected from disclosure under any privilege." *Id.* (citing *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *50 (S.D. Ohio Nov. 13, 2012)); *see also United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-00061-GNS-CHL, 2023 WL 1420426, at *8 (W.D. Ky. Jan. 31, 2023); *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 322 F.R.D. 571, 586 (S.D. Cal. 2017) ("the scope of the attorney work product privilege is limited to documents and tangible things, not the underlying facts") (citation omitted).

Graham has not proven that underlying factual data from its prelitigation testing is exempt from this general principle. In reviewing INT Nos. 6 and 7, the Court finds the information requested is generally tailored to the facts and parameters of the testing, rather than mental impressions, conclusions, opinions, or legal theories of an attorney. For these reasons, the Court finds Graham Packaging's broad claims of work-product privilege in responding to Ring Container's INT Nos. 6 and 7 are not appropriate at this juncture and supplementation of such responses is required.

Yet to the extent that responsive information to INT Nos. 6 and 7 include mental impressions and conclusions of counsel or a representative of counsel, they fall squarely within protectable opinion work product. While the documents themselves and the opinions and conclusions of counsel may be properly claimed as privileged, the underlying facts of the testing

11

are not. To remedy this issue, the Court requires Graham Packaging to identify the production number of documents and produce a detailed privilege log in compliance with Rule 26(b)(5)(A) for any document related to the prelitigation testing that it believes contain mental impressions and conclusions of counsel.

Much of this dispute could have been avoided had Graham Packaging simply produced a privilege log in compliance with Rule 26(b)(5)(A) at the outset. Ring Container, in fact, argues that any privilege over work-product should be deemed waived based on Graham Packaging's failure to initially provide a privilege log. In certain circumstances, "[t]he complete failure of a party to provide a privilege log may result in a waiver of the claimed privilege." *Jones v. Varsity Brands, LLC,* No. 20-cv-02892-SHL-tmp, 2022 WL 1913043, at *2 (W.D. Tenn. June 3, 2022) (citing *Brown v. Tax Ease Lien Serv., LLC*, No. 3:15-CV-208-CRS, 2017 WL 6939338, at *14 (W.D. Ky. Feb. 16, 2017)). Given the harshness of this sanction, however, such a waiver is not "automatic." *Id.* Courts distinguish that "minor procedural violations, good faith attempts at compliance, and other mitigating circumstances militate against finding waiver[;]| whereas, "evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver." *Brown*, 2017 WL 6939338, at *14 (quoting *Ritacca v. Abbott Lab.*, 203 F.R.D. 332, 334-35 (N.D. Ill. 2001)).

The Court rejects Ring Container's request for blanket waiver based on Graham Packaging's failure to produce a privilege log. Given that this patent litigation is still in its early stages and that there is likely some merit to Graham Packaging's claims of privilege, despite their failure to properly allege the privilege here, waiver is not appropriate. Graham Packaging is warned, however, that any deficiencies in the court-ordered privilege log will result in waiver.

ii. Did Graham Packaging waive work-product privilege for the testing documents by relying on the materials?

Ring Container argues that even if Graham Packaging has established work-product privilege over the prelitigation testing materials, Graham Packaging waived such privilege by repeatedly relying on the materials in its Complaint. (DN 47, at PageID # 524-25). Citing to several patent cases from other districts, Ring Container asserts that Graham Packaging cannot use the "sword" of its testing to support its Complaint and then attempt to raise the "shield" of privilege as to the same materials. (*Id.* (citing *Lone Star Tech. Innovations, LLC*, ASUSTeK Computer Inc., No. 6:19-cv-00059-RWS, 2020 WL 6803252, at *4 (E.D. Tex. Apr. 28, 2020); *Frappied v. Affinity Gaming Black Hawk, LLC*, No. 17-cv-01294-RM-NYW, 2018 WL 3586393, at *2 (D. Colo. July 26, 2018); *Koninklijke Philips Elecs. N.V. v. Zoll Med. Corp.*, No. 10-11041-NMG, 2013 WL 812484, at *2-3 (D. Mass. Mar. 4, 2013))). In addition to Graham Packaging placing the testing materials at issue in its Complaint, Ring Container asserts it has substantial need for the testing materials that outweighs work-product privilege. Without such testing materials, Ring Container claims it cannot determine what testing equipment and parameters were used, leaving it defenseless to Graham's infringement contentions.

Graham Packaging responds that it has not waived its privilege because it is not using the testing materials as a "sword" in that it does not intend to rely on this testing material as evidence at trial. (DN 48, at PageID # 617-20). Instead, Graham Packaging explains it will collect and generate evidence during fact and expert discovery to rely on at trial that Ring Container will have full and fair opportunity to review and rebut. (*Id.* at PageID # 617-18). Because the prelitigation testing is not evidence in the case, Graham Packaging argues Ring Container has no substantial need for the materials and their discovery requests should be denied. (*Id.* at PageID # 618). Graham Packaging alternatively argues that Ring Container has no substantial need for the

13

materials because Ring Container can use less intrusive means, i.e., conducting its own testing, to obtain equivalent information. (*Id.* at PageID # 619).

Ring Container's reply reiterates that Graham Packaging by "its every action – from filing a Complaint referencing the testing to failing to log the materials . . . – confirms waiver of any privilege." (DN 49, at PageID # 695). Explaining again its substantial need for the testing materials, Ring Container submits it must know the details of the testing to assess and defend against Graham's lawsuit. (*Id.* at PageID # 696).

Ring Container is correct that some courts in similar patent cases have found that a party's use of prelitigation testing may waive the privilege. In these cases, the determination of whether work-product privilege has been waived is based on how the party used the privileged testing materials. When the party claiming privilege only uses prelitigation testing data in its infringement contentions, courts have found work product privilege is not waived because infringement contentions simply put the opposing party on notice of the accusing party's specific infringement theories and are not considered evidence. *See Kimberly-Clarke Worldwide*, 2010 WL 4537002, at *2. This line of cases reasons that a party's mere reliance on the work-product materials to file a lawsuit or to respond to certain discovery requests is not enough to automatically waive work-product protection. *nCAP Licensing, LLC*, 2018 WL 10509455, at *2; *Lambeth Magnetic Structures*, 2018 WL 466045, at *4 (work product privilege not waived where party did not provide the information to establish infringement and the privileged information was not filed in the docket until the instant dispute).

But when a party relies on prelitigation testing data as evidence, and the opposing party can prove a substantial need for the testing information, courts have deemed the work-product privilege waived. *See Lexington Luminance LLC*, 2020 WL 10052401, at *10 (disclosure of

14

SEM image and EDX measurements in the first amended complaint put the information squarely "at issue" in the judicial arena and waived the conditional protections of work product immunity). In such situations, "justice requires that [the opposing party] has a right to the material in order to defend itself." *Kimberly-Clarke Worldwide*, 2010 WL 4537002, at *2. If the alleging party has actually relied on the privileged material, the opposing party will have satisfied the "substantial need" requirement and disclosure will be required. *Id.*

These cases generally align with the "sword-and-shield" theory advanced by Ring Container. Under the sword-shield doctrine, "work product privilege is waived when . . . party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent the opponent from challenging the assertion." *In re Application of Chevron Corp. v. 3TM Consulting, LLC*, No. H-10-134, 2011 WL 1313155, at *3 (S.D. Tex. Jan. 10, 2011) (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989) (add'l citations omitted)). As the Sixth Circuit has stated, "[l]itigants cannot hide behind the privilege if they are relying on privileged communications to make their case" and "fairness requires examination of the protected communications." *In re United Shore Fin. Servs., LLC*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) (quoting *In re Lott*, 424 F.3d 446, 452-54 (6th Cir. 2005); *United States v. Bilzerian*, 926 F.2d 1185, 1292 (1991)). Because the sword-shield doctrine is "rooted in fairness," *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 518 (N.D. Ill. 2005), the reviewing court must balance the policy of preventing sword-and-shield litigation tactics with the policy of protecting work-product materials, *In re Echostar Comms. Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006).

What affirmative action puts an otherwise privileged matter at issue for such purposes? While no definitive answer exists, courts have generally observed that where a party injects "the contents of a privileged communication . . . into litigation either by making the content of the communications a factual basis of a claim or defense or by disclosing the communication itself[,]" the sword-shield doctrine waives the privilege. *In re Itron*, *Inc.*, 883 F.3d 553, 564 n.4 (5th Cir. 2018) (quoting *Ross v. City of Memphis*, 423 F.3d 596, 604-05 n.5 (6th Cir. 2005)). The question then is whether the testing information Graham Packaging provided in the Complaint is "evidence" on which Graham Packaging actually relied. Or, stated differently, did Graham Packaging actually rely on "evidence" as a sword in advancing its claims and then impermissibly try to shield such information as privileged?

Graham's Complaint includes ample factual information from its prelitigation testing. The Complaint includes a section titled "Exemplary Asserted Claim," with the subtitle of "Infringement of Claim 1." (DN 1, at PageID # 6). This section describes how Ring Container's "accused products" satisfy Claim 1 of Graham Packaging's '809 Patent by discussing data gleaned through alleged prelitigation testing. Notably, the Complaint includes several charts showing results from the various testing Graham Packaging performed, including a nuclear magnetic resonance spectrum; an elemental scan; and a high-performance liquid chromatography-mass spectrometry analysis. (*Id.* at ¶¶ 27-37).

By providing this information in its Complaint, Graham Packaging actually relied on its allegedly privileged material and Ring Container's substantial need for such information is presumed.[3] However, the Court already determined above that factual information underlying the

---

[3] Critically, Graham's Complaint includes far more detailed information than that generally required for a patent-infringement claim to be deemed sufficient. *See Phonometrics, Inc. v. Hospitality Franchise Sys. Inc.* 203 F.3d 790, 794 (Fed. Cir. 2000) ("A patentee need only plead facts sufficient to place the alleged infringer on notice."). In *Phonometrics, Inc.*, the Federal Circuit found the patentee's complaint contained enough detail where it alleged:

prelitigation testing is not subject to the work-product privilege and has ordered Graham Packaging to respond to INT Nos. 6 and 7 to the extent that they request factual information, including the dates of each  test, the testing parameters, etc. The Court still declines to find that Graham Packaging automatically waived the opinion work product in these documents by including such factual information in its Complaint and preliminary infringement contentions. While the Court finds the sword-and-shield doctrine applies so that Ring Container can receive a full picture of the factual information Graham Packaging is relying on, the Court will not extend the doctrine to include opinion work product.

### B. INT Nos. 9 and 10

The second part of Ring Container's Motion to Compel requests Graham Packaging be ordered to fully respond to Interrogatory Nos. 9 and 10, relating to Graham Packaging's knowledge of Indorama's prior art. Specifically, INT No. 9 asked Graham Packaging to:

> Separately for each Indorama Material that is Prior Art to the Asserted Patent you contend does not or would not practice any Asserted Claim, identify all elements of the Asserted Claim that you contend are not met by the Indorama Material.

(DN 47-1, at PageID # 540). INT No. 10 asked Graham Packaging to:

> State in detail how you can simultaneously contend that Ring Container infringes by using Indorama Material and also contend that the Asserted Patent remains valid and include a detailed description of any investigation you undertook to assess Indorama Material that is Prior Art to the Asserted Patent.

(*Id.*).

Graham Packaging lodged general objections to these INTs and specifically objected they were vague and ambiguous, unduly burdensome, seeking legal conclusions, seeking disclosure of irrelevant information, seeking information from third parties not within Graham Packaging's possession, custody, or control, and seeking disclosure of privileged information. (*Id.* at PageID

---

ownership of the asserted patent; names off each individual defendant; citations to the patent allegedly infringed upon; description of the means by which defendants allegedly infringed; and specific citations to patent law. *Id.*

# 540-41). Later, on August 25, 2023, Graham Packaging amended its response to INT No. 9, stating that it would not respond to this request based on its previous objections but reserving "the right to amend this response should Ring offer invalidity expert opinions relating to the Indorama Material and its/their relevance to the inventive bottles claimed in Graham Packaging's Asserted Patent." (DN 47-2, at PageID # 551). Graham Packaging also amended its response to INT No. 10 to state that subject to its earlier objections:

> it is not aware of any investigation undertaken by Graham Packaging regarding the relevance of Indorama Material to the validity of any claim of the Asserted Patent. Graham Packaging refused to respond to the remainder of this Interrogatory for improperly seeking an articulation of the law and/or legal conclusions and seeking attorney client privileged and/or work product material. Discovery is ongoing in this matter and Graham Packaging will supplement its answer to this Interrogatory if more or different information is discovered.

(*Id.* at PageID # 551-52).

In an email to Graham Packaging's counsel on September 15, 2023, Ring Container's counsel proposed narrowing INT No. 10's language as follows:

> State in detail all facts that you contend support your position that Ring Container infringes by using Indorama Material and that the Asserted Patent remains valid in view of (1) that contention and (2) the Indorama Material having been sold or offered for sale prior to Nov. 7, 2014, and include a detailed description of any investigation you undertook to assess Indorama Material that is Prior Art to the Asserted Patent.

(DN 47-8). Graham Packaging then indicated it would respond to INT No. 9 if it was revised to request "existing non-privileged information known to Graham regarding the degree to which various Indorama materials satisfy the limitations of the asserted claims. (DN 47-7). As for INT No. 10, Graham indicated it would respond to the extent the request seeks facts but continues to claim privilege and asserts that the request improperly seeks Ring's case strategy. (*Id.*). Graham Packaging also argued that requiring it to state its defense is improper at this stage of the case. (*Id.*).

18

In its Motion to Compel, Ring Container argues its INT Nos. 9 and 10 are appropriate contention interrogatories, in that they seek Graham Packaging's position as to whether Oxyclear® is prior art; what elements of the asserted claims Graham Packaging contends are met by Oxyclear®; and what elements of the asserted claims are not met by Oxyclear®. (DN 47, at PageID # 528). Ring Container explains that Indorama is a well-known supplier in the industry and that Indorama released Oxyclear® material in 2010, several years before Graham Packaging filed its '809 Patent, making the information relevant to Graham Packaging's infringement claims and Ring Container's defense of invalidity. (*Id.* at PageID # 527).

Graham Packaging responds that it has now produced amended responses to INT Nos. 9 and 10 by providing the factual information in its possession, custody, and control. (DN 48, at PageID # 620-21). But Graham Packaging maintains that Ring Container is improperly using these requests to force Graham Packaging to "do the work associated with Ring's invalidity case" and Ring Container should not be permitted to shift the burden to Graham Packaging. (*Id.* at PageID # 621).

In reply, Ring Container clarifies that it seeks Graham Packaging's position on two contentions – whether its '809 Patent covers and uses a prior art Indorama material and whether its patent is valid. (DN 49, at PageID # 696-97). If Graham Packaging refuses to respond with its contentions, Ring Container argues Graham Packaging should be precluded from later offering fact or expert evidence on this issue. (*Id.*).

Ring is correct that "contention" interrogatories are typically permissible. Contention interrogatories "seek to clarify the basis for or scope of an adversary's legal claims." *Davis v. Am. Highwall Mining, LLC*, 570 F. Supp. 3d 491, 496 (E.D. Ky. 2020) (quoting *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 (6th Cir. 1998), *aff'd sub nom. Cunningham v. Hamilton*

*Cty., Ohio*, 527 U.S. 198 (1999)). For instance, interrogatories asking "do you contend" and requesting the party "identify all material facts that support your contention" are appropriate contention interrogatories. *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov.*, 556 F.Supp.3d 657, 678-79 (W.D. Ky. 2021); *see also Davis*, 570 F. Supp. 3d at 496 (finding interrogatory requesting "the entire legal and factual basis for defendant's affirmative defenses" required a response).

Ring Container's first iteration of INT Nos. 9 and 10 did not clearly ask for Graham Packaging's contentions. As amended, however, INT Nos. 9 and 10 seek to discover whether Graham Packaging contends that Indorama is prior art for the '809 patent and whether it contends the '809 patent is valid despite its reliance on such prior art. Ring Container is entitled to seek these contentions, as they are related to central claims and defenses in the case, and is entitled to discover the facts and application of law to facts that support such contentions. In requesting these contentions and supporting facts, Ring Container is not shifting the burden in proving its invalidity case.

But the Court agrees that Graham Packaging need not seek information beyond what is in its possession and control to respond to such interrogatories as the basis for these contentions should be within Graham's possession and control. Accordingly, to the extent that Graham Packaging is withholding any factual information, or application of law to facts, responsive to INT Nos. 9 and 10, the Court orders Graham Packaging to supplement its responses.

**ORDER**

**IT IS THEREFORE ORDERED** that Ring Container's Motion to Compel (DN 47) is **GRANTED** to the extent outlined below:

(1) Graham Packaging is ordered to amend its responses to INT Nos. 6 and 7, in compliance with the Court's guidance, **within ten (10) days entry of this Order**.

**(2)** To the extent that Graham Packaging is claiming privilege of any documents in discovery, but specifically as to INT Nos. 6 and 7, it must provide a detailed privilege log in compliance with Rule 26(b)(5)(A) to Ring Container **within twenty (20) days entry of this Order.**

(3) Graham Packaging is ordered to amend its responses to INT Nos. 9 and 10, in compliance with the Court's guidance, **within ten (10) days entry of this Order**.

Copies:         Counsel of Record