UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00110-GNS-RSE

GRAHAM PACKAGING COMPANY, L.P.                                                        PLAINTIFF

v.

RING CONTAINER TECHNOLOGIES, LLC                                                    DEFENDANT

### CLAIMS CONSTRUCTION MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' respective claims construction briefs and rebuttal briefs. The Court held a *Markman* hearing regarding disputed claim terms on April 30, 2024. That hearing addressed the four disputed terms submitted by the parties in their Joint Claim Construction Charts. These matters are now fully briefed and ripe for adjudication. The Court construes the claim terms in dispute as set forth below.

### I.   BACKGROUND

Plaintiff Graham Packaging Company, L.P. ("Graham") owns U.S Patent No. 11,345,809 (the "Patent"), entitled *Oxygen Scavenging Compositions Requiring No Induction Period*. (Compl. ¶ 5, DN 1); U.S. Patent No. 11,345,809 (filed May 31, 2022) [hereinafter '809 Patent]. The patented invention was intended to obviate the need for food and beverage containers to be stored empty for a period of time, called an induction period, to adequately protect oxygen-sensitive food. (Compl. ¶¶ 2-3). Graham filed the application to patent the invention in 2014 and finally received the patent in 2022. (Compl. ¶ 5). Graham alleges that in 2018, Defendant Ring Container Technologies, LLC ("Ring") began marketing and selling a competing container

1

under its own brand name that offers many of the same benefits as the container protected by the Patent. (Compl. ¶ 6).

## II. JURISDICTION

This Court has jurisdiction over patent infringement claims pursuant to 28 U.S.C. § 1338, which provides that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." 28 U.S.C. § 1338(a)

## III. STANDARD OF REVIEW

"[C]laim construction serves to define the scope of the patented invention and the patentee's right to exclude." *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1055 (Fed. Cir. 2024) (quoting *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017) (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)). "Claim construction is the judicial statement of what is and is not covered by the technical terms and other words of the claims." *Id.* (quoting *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001)). "The words of a claim 'are generally given their ordinary and customary meaning,' which is 'the meaning that the term would have to a person of ordinary skill in the art.'" *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1377 (Fed. Cir. 2021) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc)). "When construing claim terms, [a court] first look[s] to, and primarily rel[ies] on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive." *Google*, 92 F.4th at 1058 (quoting *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013)). "A patentee may, through a clear and unmistakable disavowal in the prosecution history, surrender certain claim scope to which he

would otherwise have an exclusive right by virtue of the claim language." *SpeedTrack*, 998 F.3d at 1377 (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009)).

## IV. DISCUSSION

The parties submitted a Joint Claim Construction Statement containing four disputed terms/limitations.[1] (Joint Claim Construction Statement 3-4). At the Markman hearing, the parties agreed that they could resolve the dispute regarding the third and fourth terms/limitations without the Court's intervention. Accordingly, the Court need only address the first and second terms/limitations.

### A. Claims 1, 21: "A bottle comprising a wall comprising at least one layer, said one layer comprising a composition, said composition comprising . . . ."

| Graham's Proposed Construction | Ring's Proposed Construction |
|---|---|
| The preamble language is a limitation and should be given its plain and ordinary meaning. | The preamble language is a limitation. The phrase "*a wall comprising at least one layer, said one layer comprising a composition*" renders the preamble indefinite. |

Ring argues that the term "layer" is indefinite because a person of ordinary skill in the art ("POSITA") would be unable to determine the meaning of "layer" within the context of the patent. (*See* Def.'s Claim Construction Br. 13-14, DN 65).

"A 'patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

---

[1] In the Joint Claim Construction Statement, the parties agreed that the limitation "polyethylene terephthalate that is substantially free of antimony" found in claims one and twenty-one should be construed to mean "PET that includes less than 100 ppm of antimony." (Joint Claim Construction Statement 2, DN 54). The parties also agreed that the limitation "polyethylene terephthalate that is . . . substantially free of phosphorous" found in claim one should be construed to mean "PET that includes less than 20 ppm of phosphorous." (Joint Claim Construction Statement 2). The parties agree that the term PET is a shortening of "polyethylene terephthalate" and "that use of this abbreviation does not in any way change the scope or meaning of the claim language . . . ." (Joint Claim Construction Statement 2). These constructions are reasonable. Accordingly, these limitations within claims one and twenty-one will be construed consistent with the parties' agreement.

3

skilled in the art about the scope of the invention.'" *Grace Instrument Indus., LLC v. Chandler Instruments Co.*, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)). "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (citation omitted).

Ring contends that the Patent fails to inform a POSITA about the scope of Graham's invention because a POSITA would be unable to identify a single layer in a multilayer bottle, making it impossible to determine if the bottle wall has a layer that falls within the patent's limitations. (*See* Def.'s Claim Construction Br. 14-15). Ring's expert, Dr. Robert Moore ("Dr. Moore"), admits in his declaration that "a person of ordinary skill in the art would have understood the concept of a layer in a multilayer bottle . . . ." (Moore Decl. ¶ 55, DN 65-11). He explains that, nonetheless, "[w]ithout being able to first identify the bounds of the 'layer' a person of ordinary skill in the art cannot conduct the various measurements to determine" whether the layer has the qualities described by the patent. (Moore Decl. ¶ 44). Dr. Moore emphasizes that "[r]eliable identification, isolation, and precise separation of a layer is critical to achieving consistent results when measuring the layer's chemical composition." (Moore Rebuttal Decl. ¶ 7, DN 111-1).

Graham's expert, Dr. Robert Kimmel ("Dr. Kimmel"), disagrees with Ring's position that there is no way to separate the layers of a multilayer bottle but opined that the question is not relevant. (Kimmel Decl. ¶¶ 56-57, DN 76-1). Dr. Kimmel offers an extensive explanation of how a POSITA could determine whether a layer within a multilayer bottle wall contained less than 100 parts per million of antimony even if the layer had some interface with another layer with a higher antimony concentration because "the precise boundaries between the layers are

4

immaterial." (Kimmel Rebuttal Decl. ¶ 6, DN 118-1). He explained that "a POSITA could simply test portions of the individual unadulterated layers having homogenous consistency." (Kimmel Rebuttal Decl. ¶ 6).

Ring argues that the Federal Circuit has found indefiniteness where patent language leaves ambiguity about how to measure a particular term. (*See* Def.'s Resp. Pl.'s Claim Construction Br. 7-10, DN 75). For example, Ring asserts that *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015), is on point. (Def.'s Resp. Pl.'s Claim Construction Br. 8-9). In *Teva*, the Federal Circuit found the term "molecular weight" indefinite where a POSITA could reasonably interpret the term to mean any one of four different things. *See Teva*, 789 F.3d 1335, 1342-45. This is not the situation here: Ring has not asserted that a POSITA could potentially understand "layer" to have one of many definitions. Instead, Ring's argument focuses on a POSITA's ability to discern a layer within a potentially infringing product. (*See* Def.'s Claim Construction Br. 14-15).

Similarly, in *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003)[2], the Federal Circuit found the term "synergistically effective amount" to be "the epitome of indefiniteness" where the patentee's proposed construction created a situation where a competing product "might infringe or not depending on its usage in changing circumstances." *Id.* at 1384. By contrast, a "layer" in a multilayer bottle lacks such dynamism, as there has been no evidence that the layers in a completed bottle would change in any circumstance. While Ring asserts that issues may arise in attempting to measure one particular layer, as stated above, even Dr. Moore admits that a POSITA would understand the concept of a layer in a multilayer bottle. (Moore Decl. ¶ 55; *see* Def.'s Claim Construction Br. 14-15).

---

[2] Although *Geneva Pharmaceuticals* was decided before *Nautilus*, the term at issue provides a helpful comparison.

Ring also relies on *Saso Golf, Inc. v. Nike, Inc.*, 843 F. App'x 291 (Fed. Cir. 2019), which is inapposite. The Federal Circuit's finding of indefiniteness in that case bore directly on measurements required to determine infringement of a protected golf club design, whereas here the required measurements—the concentrations of antimony and phosphorous—are incidental to the alleged indefiniteness: the boundaries of the relevant layer. *Id.* at 298. The Patent contains no limitation with respect to the required thickness of the layer, and instead only requires the presence of a layer with a certain chemical composition. (*See* '809 Patent col. 21 l. 6-17).

The reasoning in *Almirall, Inc. v. Amneal Pharmaceuticals. LLC*, No. 19-658, 2021 WL 243210 (D. Del. Jan. 25, 2021), is instructive. There, a court considered a similar argument that the plaintiff's patent was indefinite because a POSITA analyzing the final composition of the invention would be unable to determine whether the concentration of a certain chemical satisfied the concentration requirement described in the patent. *Id.* at *3. The court rejected this argument, explaining, "Amneal primarily argues a [POSITA] could not reverse-engineer a completed composition to determine whether it infringes, but whether a [POSITA] can analyze a finished product and know whether it infringes is not the aim of the definiteness requirement." *Id.* at *4. Likewise, here, evidence that a POSITA would not be able to separate the layers of a completed multi-layer bottle does not prove that the term "layer" is indefinite.

The existence of layer interface and the alleged impossibility of mechanically separating layers in multilayer bottles do not bear on indefiniteness. The Court is satisfied that a POSITA would understand, with more than reasonable certainty, what a "layer" means in the context of the Patent. Accordingly, Ring has failed to show by clear and convincing evidence that claims 1 and 21 are indefinite, so these claims will be given their plain and ordinary meaning.

**B.     Claims 1, 21: "wherein the wall has an oxygen permeability of not more than about 3.0 cm$^3$ mm/(m$^2$ atm day) immediately after the package is formed."**

| Graham's Proposed Construction | Ring's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>"Immediately" means: "eliminating any induction period such that prolonged aging or conditioning of formed bottles is not needed." | The wherein clause is material and limiting to the claim.<br><br>The claimed oxygen permeability parameter is caused by creating a layer from PET that is substantially free of [Claim 1: antimony and phosphorous] or [Claim 21: antimony], which characteristic eliminates any induction period for formed bottles. |

### 1.     *Whether "Wherein" Should Imply Causation*

Ring argues that "wherein" creates the limitation that the bottle wall's oxygen permeability must be caused by the layer described in the preceding sentences of claims one and twenty-one.  (*See* Def.'s Resp. Pl.'s Claim Construction Br. 11-14).  Graham agrees that "wherein" is limiting but argues that Ring is going a step further by attempting to "import a limitation that does not currently exist directly into the language of the claims."  (Pl.'s Resp. Def.'s Claim Construction Br. 13, DN 76).  Ring relies heavily on the Federal Circuit's decision in *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370 (Fed. Cir. 2019), for the position that, when a "wherein" clause is limiting, it necessarily implies causation.  (Def.'s Resp. Pl.'s Claim Construction Br. 11-13).

> *Allergan* involved a patent claiming:
>
> A method of treating a patient with glaucoma or ocular hypertension comprising topically administering twice daily to an affected eye a single composition comprising 0.2% w/v brimonidine tartrate and 0.68% w/v timolol maleate, wherein the method is as effective as the administration of 0.2% w/v brimonidine tartrate monotherapy three times per day and wherein the method reduces the incidence of one o[r] more adverse events selected from the group consisting of conjunctival hyperemia, oral dryness, eye pruritus, allergic conjunctivitis, foreign body sensation, conjunctival folliculosis, and somnolence when compared to the administration of 0.2% w/v brimonidine tartrate monotherapy three times daily.

7

*Allergan Sales*, 935 F.3d at 1372-73 (alteration in original) (quoting U.S. Patent No. 9,770,453 (filed Feb. 22, 2017)). In the district court, the parties contested whether the "wherein" clauses should be construed as limiting the patent or as merely "express[ing] the 'intended result[s]' of the invention." *Allergan Sales LLC v. Sandoz, Inc.*, No. 2:17-cv-10129, 2018 WL 3675235, at *5 (D.N.J. July 13, 2018) (second alteration in original) (quoting *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001)), *aff'd*, 935 F.3d 1370 (Fed. Cir. 2019). The Federal Circuit affirmed the district court's holding that the "wherein" clauses were limiting, reasoning that the claim language, read alongside the specification and prosecution history, showed that the clauses were "neither unnecessary nor irrelevant, but were instead material to the Examiner's patentability determination." *Allergan Sales*, 935 F.3d at 1376 (footnote omitted). Contrary to Ring's characterization, *Allergan* did not discuss whether a "wherein" clause necessarily implies causation, but only considered whether the "wherein" clause was limiting at all. This distinction renders *Allergan* inapplicable to the present issue in light of Graham's agreement that the "wherein" clauses are limiting.

### i. Intrinsic Evidence

Ring also points to the Patent's specification and prosecution history in support of its argument that a causation requirement should be read into the "wherein" clauses in claims one and twenty-one. (*See* Def.'s Claim Construction Br. 16-17). Graham disagrees, asserting there is no basis for this additional limitation and that the composition requirements in claims one and twenty-one pertain to the "layer," while the oxygen permeability requirements pertain to the entire bottle wall. (Pl.'s Resp. Def.'s Claim Construction Br. 13-18).

Ring cites certain sections of the specification that it contends support its interpretation of the "wherein" clauses. For example, Ring points to a section in the Patent specification where

the claims' oxygen permeability requirements were understood to be caused by the specified low antimony/low phosphorous layer. The relevant portion of the specification states,

> When the instant compositions are used in a wall or as a layer of a wall, the permeability of the composition for oxygen is advantageously not more than about 3.0, or not more than about 1.7, or not more than about 0.7, or not more than about 0.2, or not more than about 0.03 $cm^3$ mm/($m^2$ atm day). . . . The above-described permeabilities are achieved without an induction period, which, in practical terms means that such permeabilities are achieved immediately after the container is formed.

('809 Patent col. 10 l. 35-40, 58-61). Graham acknowledges that the patent teaches the importance of low levels of antimony but argues that a causal limitation is extraneous because the patent already requires a layer of PET that is low in antimony. Graham's argument is availing. The Federal Circuit has repeatedly held that "it is improper 'to import limitations from the specification into the claims.'" *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 860 F. App'x 735, 737 (Fed. Cir. 2021) (quoting *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371-72 (Fed. Cir. 2014)). "Embodiments in the specification . . . cannot limit the scope of the claims absent the patentee's 'words or expressions of manifest exclusion or restriction.'" *Id.* (quoting *Hill-Rom Servs.*, 755 F.3d at 1372). Here, Ring is not asking the Court to define an ambiguous term in accord with a definition or disavowal within the specification, but instead asks that the Court create a new limitation that Ring contends is implied by this embodiment of the invention and by certain statements of purpose within the specification. The Court finds insufficient support within the specification to do so.

Ring also argues that the prosecution history shows that the "wherein" clauses were material to the Patent's patentability. Graham initially sought a patent for "a composition comprising a polyester base composition that is substantially free of antimony and substantially free of phosphorus, and that further comprises an oxidizable polyether-based additive, and a

9

transition metal salt catalyst." (Def.'s Claim Construction Br. Ex. B, at 2-3, DN 65-2). The patent was rejected as obvious, and the Patent Trial and Appeal Board affirmed. (Def.'s Claim Construction Br. Ex. B, at 9). Graham conducted an interview with an examiner from the U.S. Patent and Trademark Office and "[d]iscussed a potential limitation drawn to a lack of an induction period and whether this would make the claim more commensurate in scope with the argued solution to the problem of an induction period." (Def.'s Claim Construction Br. Ex. F, DN 65-6). The Patent was amended to add the wherein clause and to limit the claimed invention to a bottle, and the examiner subsequently withdrew his rejections. (*See* Def.'s Claim Construction Br. Ex. G, at 2, DN 65-7; Def.'s Claim Construction Br. Ex. I, at 3, DN 65-9).

This argument mirrors Ring's argument with respect to *Allergen*. The prosecution history undoubtedly shows that the "wherein" clauses were material to patentability but fails to provide a basis for concluding that this limitation justifies the imposition of a causation requirement. Ring also fails to point to any statement by Graham in the prosecution history that can be construed as a "clear and unmistakable disavowal." *SpeedTrack*, 998 F.3d at 1377 (quoting *Vita-Mix*, 581 F.3d at 1324).

### ii. Conclusion

For the foregoing reasons, while "wherein" certainly limits claims one and twenty-one, Ring has failed to present a compelling argument for taking the additional step of reading a causation limitation into the claims. Accordingly, the "wherein" clauses are limiting only to the extent they create a performance requirement for the bottle wall in accord with their plain and ordinary meaning.

### 2. *"Immediately"*

Graham suggests that the Court construe "immediately" to mean ""eliminating any induction period such that prolonged aging or conditioning of formed bottles is not needed." (Joint Claim Construction Statement 3). Graham proposes this definition only "to the extent the Court deems it helpful" to "help the jury understand the term immediately" in the context of the claims. (Pl.'s Claim Construction Br. 12, 14). Ring opposes this construction, claiming that Graham is attempting to inappropriately inject additional language unsupported by the Patent.

"Although every word used in a claim has a meaning, not every word requires a construction." *In re Neo Wireless, LLC Pat. Litig.*, No. 2:22-MD-03034-TGB, 2022 WL 17077494, at *3 (E.D. Mich. Nov. 18, 2022). The Court is satisfied that a POSITA and a jury both would understand the meaning of the term "immediately," and therefore declines Graham's suggested clarification.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that claims one and twenty-one are to be construed according to their plain and ordinary meaning.

Greg N. Stivers, Chief Judge
United States District Court

June 27, 2024

cc: counsel of record